I am Harold Campbell and Mr. Gebhardt here. I work on my follow-up with Mr. Gaughan on the other case and I am reserving two minutes to reply. And are you arguing the whole case? No, I will argue about six or so, depending on what things you ask me, then we can start to argue something. Okay, go ahead. And I think everybody would agree that the Supreme Court told us in 1992 in the Taylor v. Contes that once a debtor exempts certain pieces of property, and if there is no objection by the trustee within 30 days of the Section 341 present hearing, that is a huge exemption on behalf of Congress. And in the Ninth Circuit, we've all agreed with this. We've got the Smith case, a 2000 case, that cites a suit Owen v. Owen in the Supreme Court that property deemed exempt from the debtor's bankruptcy estate will be vested in the debtor. This gives certainty to everybody, creditors, trustees, debtors, so that all parties know early on exactly what belongs to the estate and what belongs to the debtor. So your position is that the exempt property passes out of the estate at the outset? Yes, if there's no objection. And what's the authority for that? The authority for that is the Taylor v. Contes case and the Inmate Smith case. Well, I don't think Taylor said that. I mean, it did say that if you don't object, the exemption is upheld, but I don't think it necessarily said that it disappears from the estate at that point. Well, it said so at the circuit court level, and this has been interpreted by this Court here in the Inmate Smith case, which is a 2000 case, as we have cited here, 235 F. 3rd 472, where it says, quote, it is widely accepted that property deemed exempt from a debtor's bankruptcy estate will be vested in the debtor's bankruptcy estate. Smith is not a Ninth Circuit case. California, I believe it is. It's a back case. No. So the question is whether the property is exempt or an interest in the property is exempt. Right? Isn't that the difference? I mean, isn't that the difference that the cases apply in our circuit? That is where the Reed and the Hyman cases come in here. I don't know. I think, quite frankly, Reed and Hyman are consistent with what's happened here, because both Reed and Hyman dealt with non-exempt property that was non-exempt as of the date of the filing. There was a partially exempt house and there was equity over the homestead that was not exempt. And what these cases dealt with was they said if it's not exempt, then appreciation on the non-exempt part inheres to the estate and not to the debtor. So you have to realize that I'm not a bankruptcy expert and I can say things that may not make sense, so you should tell me if they don't. But this is where I get confused. Here we have you're claiming that the entire property is exempt, but that is premised on how one treats the security interest, the mortgage, right? Because you have to be assuming, when you say that, that the existence of the mortgage also backs out at the same time. Right. But that's not true, is it? I mean, in other words, you have a house, you have a mortgage, and you have an exemption. My understanding is that the house is in the estate with a security interest on it, right? Yes. And then you have an exemption for some amount of money, but the house is still in the estate, so how can you say that it's true that if you add up the security interest and the exemption, that's 100 percent at the time of the filing, but you still have an actual live body house that is subject to a security interest but isn't the security interest. This is the point of the Reed case, which dealt with California law, and almost all of Reed dealt with what is exempt? Is it the home? No, I actually think that the point I'm making isn't in any case, because it doesn't have to do with whether the exemption. I'm not asking you about the exemption. I'm asking you to educate me a little bit about the security interest. What is the relationship between the house and the security interest? Because your position depends upon backing out the entire security interest at the outset, not only the exemption. What would happen is if a trustee sells a house, let's say the house is worth $300,000, and if there's a $200,000 security interest on it, then he must first pay $200,000 to the security interest. He has to pay the debtor. Let's suppose you had a house with 100 percent security interest on it. All right. My understanding is that that's not zero. It is zero if the trustee decides to abandon it because it's not going to go anyplace. But it goes into the estate at the beginning. Let's say there's no exemption. It's just a house with 100 percent security interest on it. The house is in the estate, and the security interest is on the house, and it gets priority and will be paid off. But it doesn't mean the house is out. No, I would disagree with that, because the way the property of the estate scheme works is you start with the premise, everything debtor-owned is in the estate. Now, certain things by law, Section 541, are not part of the estate. 401Ks, the education savings plans. So that's not something a trustee can administer. Then the debtor says, I exempt certain things. I'm going to remove certain things. No, but Judge Breslau's example is, you know, she said, put aside the exemption. We're just talking about a piece of property that's, say, you know, 100 percent covered by the security. That's still property of the estate, right? It's property of the estate until the debtor puts an exemption on it. No, no, wait a minute. Forget about the exemption now. Even though, you know, it's got zero value to the creditors, it's property of the estate. And if, for instance, you know, when it increases in value during the administration of the estate, say, by a million dollars, the million dollars doesn't belong to the secured party, right? It belongs to the estate. Is that right? In that situation, you agree to that? In that situation, yes. Now, you think because there's a statutory exemption, the homestead exemption that allows the debtor to claim X dollars, that that makes a difference as to whether the property is or is not in the estate? Yes, it makes a tremendous difference because this is the debtor's home. But what about our opinion in which case it is? Judge Kuczynski wrote that. Well, this homestead interest, in effect, really doesn't spring to life until the property's sold. That is California law. But I don't think in that respect Arizona law is any different. No, Arizona law is different. I cite the Evans v. Young case because our Arizona Supreme Court has dealt with the issue of what is a homestead. Is it a dollar amount or is it the actual home itself? Let's assume you're right about that, okay? The difference then might be that the very partial exemption you have might be viewed as an interest in the whole property, which was what the Hyman case rejected, and you might get some of the appreciation. But you still wouldn't get all of it. And that's why I'm focusing on the security. To me, the more I thought about this, the more your position seems to be making more of an assumption about the security interest than it is about the exemption. And I'm not sure you're understanding what I'm saying. But it looks like your co-counsel is because he's nodding his head, so perhaps we should hear from him. I think he's watching my time here. So I will turn this over to him, just reminding the panel that this case is also about finality. We have to know exactly what's properly safe, what isn't, so that everybody can administer things and take care of this thing. Thank you. First, with respect to your question as to how we get the property as opposed to the value, I think we look at 522. And I'm sorry, I don't remember the code section. The code section, the sub-code section is on the site. You can see the specific one. And it's not cited in my brief. But the code in Congress in the 1905 or 1903 amendments, as a matter of fact, overruling a prior decision of the work group, rejected the fact that you said that you value property for purposes of avoiding these changes by taking out the reason that we need to determine what the value of the home is. And that's how we get there. It's in the statute. What is in the statute is that the lien on the property, what? The lien on, when you determine the value of a homestead with respect to liens, you deduct them out and determine what the value is, which is the same for valuing what the homestead is. It's a statutory process. And I'm happy to submit a supplement to you as to something about it. But it's, when you practice bankruptcy law, it's the things that you do. It says 522C, this one, unless the case is dismissed. No, it's further down. I did look at it. I don't have the exact number. So your position is that the lien amount, what? The lien amount is relevant for determining what the exemption is, what the value of the exemption is. Well, that's clearly true. But that doesn't lead you, doesn't solve the question of whether there is anything in the estate, i.e. the house with the security interest. Well, there is in the, once we agree, Your Honor, that you determine what the value of the exemption is, by deducting the liens out, we then have the property rights in the estate. And then the debtor claims an exemption in the property. They claim an exemption in the value. The exemption is in what the property is. It's the house. It's the lawsuit. All right. But ultimately, your position has to turn on the fact that the, in your cases, the lien and the exemption add up to the whole value at the time of the petition. If it didn't, then what? Suppose it didn't. If it didn't? Yes. Well, if there's excess equity, then that clearly belongs to the trustee. What belongs to the trustee? The excess equity or the house? The equity being sold over and above the homestead amount. So there is something. See, this is why there's some kind of a conceptual problem here, because the title to the house has to in some way be in the estate. Either way. Absolutely correct. Right? And then in Owen v. Owen, which was an opinion by, I believe, Judge Scalia, but I don't remember. It is. Okay. After 30 days, the trustee has an election. You exempt, you object to the election. And the BAP agreed with that. That's not why we're here. But then why does it, could it possibly, if the title to the house is in the estate, why could it possibly matter whether the exemption and security add up to 100% or 90%? Because after 30 days, if the value of the claims exemption is totally exempt, the property passes out of the estate. Yeah, okay. The security interest and the exemption pass out of the estate. The title to the house is still there, and he still has to sell it. No. Why? The title passes out of the estate. Why? That's what I don't understand. Because that's what the court said in Owen v. Owen. It's what the statute said. Well, Owen wasn't really about that. It was about something else. Actually, it was about a homestead in Florida. But the court said in Taylor v. Don, just about every circuit that's addressed it has said is that the property passes out of the estate. It's no longer part of the estate. It's no longer available for administration. It becomes property of the debtor. But that's not the law of the ninth circuit. Actually, it is. And I was going to say that. By the way, let me remind you of something else. Your case involves the Federal exemption statute, right? So in that sense, is there some different consideration that doesn't apply to Arizona or California? I think. Or is it in principle the same? I think the principle of Arizona and Washington, where the federal exemptions are similar. I think that California law, one judge declared it as the nature of an encumbrance when the trustee says the property is clearly different from under federal law. I do want to point out that Smith with 235, Fed Third, 478 is, in fact, a ninth circuit case. It postdates both Taylor. I mean, postdates Hyman. And in that case, the court said specifically that it was self-executing. That's 235. What? Fed Third, 472. 472. OK, thank you. It's widely accepted that property deemed exempt from the debtor's bankruptcy. That's how we get there. Now, well, but that doesn't really clear up what revests, does it? It goes into the estate, it's exempt, it's not objected to, it revests in the debtor. I mean, does your position turn on the way in which these schedules were filled out with regard to the Taylor issue, i.e., that it says property and you name the address, and then you say, then you have the security interest and then you have the exemption? That's an important point, Your Honor. And the schedules, I serve on an ABA task force on attorney discipline, and one of the problems with the schedules is that they are confusing signals. There's no magic words that any court has come up with that said that, let's say, if you're claiming the entire property, you can put these magic words down. And therefore, everyone knows in Taylor versus. But isn't the question whether you can claim the entire property? Well, every case that has recently occurred from across the circuits has said that you can. Taylor versus Conn clearly said you could. In that case, it was a multi-hundred thousand dollar lawsuit that the debtor claimed as being worth a dollar. Well, clearly, if you had a house worth $90,000 and no mortgage, and you wrote down, I'm claiming my house, which is worth $90,000 as an exemption, the exemption is $90,000, you would appear to be claiming the house worth $90,000. But here, you are not claiming as an exemption the entire house worth whatever hundreds of thousands of dollars it was. You're claiming a portion of it as an exemption, and another portion of it you're saying there's a lien on it. Well, Your Honor, we value the statute says claim it. The form says what's the value of the claimed exemption? We're claiming X, Y, Z house at 45. Camino Island, Washington. But your claim would never exceed the exemption. In the potential for a build-out property, your claim can never exceed the exemption amount. So if you have a house worth a million dollars and you have $100,000 exemption and $100,000 in equity, you would claim $100,000. If, on the other hand, your equity is, as in this case, below the maximum amount, we put it down to $100,000. And the value of that, what's the value of that? You're a bit out of time, but let me ask you whether the – I'm still looking for the section that you mentioned. And is this it? For the purposes of the subsection, a lien shall be considered to impair an exemption to the extent that the sum of the lien, all other liens, and the amount of the exemption that the debtor could claim, so no lien exceeds the value of the debtor's interest in the property. That's what I'm thinking. That's what I'm thinking. Okay. Thank you. May it please the Court. Counsel. Your Honor, excuse me. I'm Steve Brown. I represent the Chapter 7 trustee in the Hempart case. I have some briefness to provide. I'm going to try to handle most of the arguments, but I'd like to reserve a couple of minutes. I'm sure I'll miss specific suggestions about cases. Okay. Your Honor, the fundamental problem with the debtor's argument absolutely ties in with the lien issue. With the what issue? Oh. Because in both of these cases, the debtor's own schedules list the value of the home as more than the scheduled value of the exemption. Right. The rest of it is the lien. And the question is, first of all, do you agree that if the schedule had said $90,000 house, no mortgage, $90,000 exemption, that the whole house backs out at that point? Yes. You do? I do. All right. So there's no chance at that point that anybody could claim that the title of the house is still sitting in the estate and could be sold for $180,000 three years later? Highly doubtful. I'd like to see the circumstances. But the debtor's entitled to an exemption if the entire value of the exemption turns out to be or is scheduled to be, the entire value of the asset is scheduled as less than the amount of the exemption. And you believe that that happens at the beginning and not at the time of the distribution? Yes. Okay. There would be no asset. That asset would be removed. Procedurally, then, is there an abandonment by the trustee of the estate interest? Is there an abandonment? Is that procedural? No. In that example? Yeah. No, it wouldn't be necessary. Well, then you say in these instances to avoid these long, drawn-out ñ I mean, frankly, I was always assumed that once the discharge occurred in Chapter 7 that the closure would follow soon afterwards. There are obviously enormous incentives at this point, if you're correct, for that not to happen, for these cases to drag out for years. Well, no. We're back to the case at hand here where the value of the asset is scheduled to be more than the exemption. By definition, that creates an asset that has to be administered by the estate. Well, what about the section that my question about how you treat the lien in this section, which maybe we should have some briefing on, that seems to say something about how you treat the lien? You know, he said it wasn't even in the brief. Well, of course it wasn't, but it seems to me to be key. Let's look at the code. The code deals with numerous situations where liens are dealt with well beyond the exemption period. The best example is ñ and it answers this whole question about the security interest. Let's take that million-dollar home, scheduled at a million dollars, scheduled with a $900,000 lien, and scheduled with a $100,000 claim exemption value. By the debtor's argument, that asset's gone after 30 days. The entire thing is removed. Even though the asset itself, a million-dollar scheduled asset, has a value well beyond the exemption, the trustee under the bankruptcy code has up to at least two years to investigate and seek avoidance of that lien. That doesn't happen in the first 30 days of a bankruptcy. Let's take the example further. If the debtor is the one who put that false lien out there, anticipating a bankruptcy, he just grants a bogus lien. So he's careful. If he decides he doesn't need the exemption, there's a fake $900,000 lien under it. But under debtor's argument, that asset has somehow been removed from the estate entirely, even though his own schedule says it's worth a million dollars and the exempt value is $100,000. So your position does ultimately turn on the lien, that is that the title and the security interest have to stay in the estate as long as they're in excess of the exemption. Well, it's not just the lien. I mean, there are other issues that a trustee has to administer an asset even that is subject to an exemption. There are exceptions. Here are some other questions. First of all, you rely in your briefs on the abandonment possibility. But that seems to me to be quite circular. I mean, if, in fact, the appreciation goes to the trustee, then the trustee, it seems to me, if there's an abandonment motion is going to say, well, no, there is an advantage to the estate because there could be appreciation and it would be a breach of fiduciary duty for me to simply abandon it at this point. So doesn't the answer to the solution that you're proffering? Well, not really, because at the time of an abandonment, the value of the property then becomes the issue. That doesn't make any sense, right? In other words, if you're going to look at the value of the property at the time of the abandonment, why don't you look at it at the time of the petition? I mean, in other words, either we're taking a long – I understand that you're relying on the language of the abandonment provision But that seems crazy because it means that as long as they make an abandonment motion simultaneously with filing the petition, it comes out differently. Well, frankly, if they file the abandonment motion simultaneously with the petition, there are certainly going to be arguments as to whether – what extent we need to investigate the liens. We're back to that issue. The trustee has to have time to look at other issues as to the property, as to title, as to security interest, as to avoidance. And yet you would say that if they file the abandonment motion and those issues are resolved, you then do stop the clock at that point, but you don't stop the clock at the point of the petition. Well, the standard for abandonment is still whether the asset is burdensome to the estate or potentially has value to the creditors. Right. And if it's in an increasing real estate market, how could you say it doesn't have value to the estate? It was in an increasing real estate market right then. Right. And that asset is appreciating and can be dealt with promptly, put up for sale, sold in excess of the value of the exemption of the security interest. That's an asset. The Code provides for all this. The problem here is the creditors are trying to control the zone. That doesn't actually have something in the code that appeals to them. And what about the other arguments that are made with regard to we're putting – if they're, in the meanwhile, paying off the mortgage or painting the house or somehow increasing the value, what happens to that? Well, the VFU case, don't head on with that, the Half Circuit 9 case, because that same argument was made there. It's used as administrative expense, which was basically the case. A debtor could make a claim for it. A debtor could make a claim for it. And if there's a value, the bankruptcy court could grant administrative expense. But in the meantime, the debtor is preserving his own exemption. The debtor is paying for the house but also living there. He is keeping the house from being foreclosed. He is protecting his own exemption. That's not the real estate. That's the bad house. The point, though, is there is nothing in the code, the cases, the authority here where that aspect was removed from the bankruptcy estate. And what the debtors are trying to do is create an exemption issue on a little bit of the property of the estate issue. The code dictates when property is removed from the estate. Once again, if that mean is avoided, the debtor's position, their ability to put that fake lien on there has given them that ability to pull the asset off the loan within 30 days. They have eliminated several cases. One, the two-year statute where the trustee can look at property conveyances under 548. A small amount of 542 under 544. The trustee has three years under 546 to look at all of those issues. And all of them will be removed from those loan cases so that million-dollar asset may still have value. The second one is a nationwide elimination of the concept of a cap on homesteads. A point I'm sorry to make. A cap on homesteads. All of these statutes that provide homestead exemptions, but for I think two states still have an unlimited homestead exemption. The Ninth Circuit in Hyneman pointed out that all of the nine states in this circuit all have a cap. But Hyneman did seem to care a lot about the wording of the California statute and the fact that it was an exemption of the proceeds of the sale and not of an interest in the property. And there is at least some argument with regard to the Arizona statute, for example, that it is the other. I mean, that may not lead to a total exemption, but it might lead to valuing things differently because you might regard the exemption as essentially a partial interest in the house such that if the house appreciates, you get that proportion of the appreciation. Hyneman did look at the California statute. It pointed out that there is a cap on the exemption. It pointed out that every state in the Ninth Circuit has a cap on the exemption. But some of them seem to be an interest in the property and some of them seem to be an interest in the proceeds of the sale of the property. But even the other case, the Arizona case, which is not a Supreme Court case like the counsel said, it's an Arizona total bills case. But even in Evans, the 1983 case, that court acknowledged that the statute in Arizona allows for the sale of the homestead if the value exceeds. Yeah. Okay, but it still doesn't tell you what they get out of it. They get the maximum amount of the property. But why, if you thought that the exemption was essentially an interest in the property, when they filed the schedule and claimed the exemption, if you did a proportion, why aren't they essentially claiming at least a pro rata share of the property such that assuming that the property then stays in the estate, if there is appreciation, they get a proportion of an equivalent of the property. It's like a joint tenancy, essentially. It's a claiming exemption with equity, and there's no authority for that. Well, that's the question. That's the question, not the answer, right? I mean, it's essentially whether looking at it as a property interest is essentially looking at it as an equity interest. And then once again, we're back to what's the point of the cap? There would be no need for the cap. Why? There would be no need for the cap as of the time it's claimed, and then the question is if it appreciates in the meanwhile. The cap is a cap as of the time of the petition. Why not? But even the Evans Court, where they're trying to make that claim on it, pointed out that you determine what that debtor is going to get only at the time that the asset is sold and there are proceeds to distribute. That's exactly what the Arizona court said. So even though there was language in the Evans case that mentioned our concern that the White House is the home, it was still said the way the statute is written. And at that time the statute had an appraisal process that you had to go through as a judgment leaner before you could sell. The statute was immediately changed after that and allowed for a forced sale as long as the ultimate proceeds that can be sold are sufficient to give the debtor his $100,000 at that time exemption. So please look at the Evans case because it still allows the nephew of the property owner and it says that you deal with that at the time the property is sold. And in the Evans case it pointed out that under Arizona law they don't even include the other judgments in the statute. They only look at the consensual leans for valuation. But in that case, costing $200,000 at the time of sale the maximum cost is $1,000,000 for the statutory cap on the exemption. They're not going to be able to depreciate it at that time in excess of the cap. Why would the debtor in a non-bankruptcy situation fare better than they would against all of their creditors in a bankruptcy situation? The trustee indeed has more powers than a judgment leading to bankruptcy. Unless the court has other questions, I think that's all. Okay, thank you very much. The issue about the lien for the part of the bankrupt state is really key, I think. The reason is because there are situations when, especially in D1 and D5, D5 is a poor exemption. If you do not have any value, if the lien exceeds the property value, a lot of times people get a poor amount of the property value. You do not list anywhere in Schedule C an exemption amount. Okay? So it can be key in a situation like that where it's not even listed. So it's still property to the state. What is still property to the state? Property. Property subject to the lien. Yeah, it's Schedule A, but it may not be subject to Schedule C. It may not be claimed to be subject at all. Well, just because you claim an exemption doesn't necessarily mean it goes out. I don't want to go back too much time. I want to make the point that there have been many times that I have sold property after I had avoided liens in the property. This is a time when, for example, about three or four months ago, an escrow company forgot to record the mortgage. So what happened is they were able to sell the whole property because even though they listed the amount of the property as full exempt of $40,000, I was able to, with my strong-arm power, sell the property because I was considered a bona fide purchaser on the second file. What is the protection in this system against the trustee just sitting on these cases forever? The U.S. Trustee's Office really highly regulates our office. We have a separate agency that I have to file reports every year with the U.S. Trustee's Office. And one of the things is one of the policies is that we administer the cases. But these don't look to have been administered very timely. Well, in this case it was because I had an underlying lawsuit based on the It was a construction defect under the underlying property. Isn't there ultimate remedy? If there's some, I'll call it, you know, malfeasance in office by the trustee to petition the court to, you know, appoint a replacement trustee, isn't that the ultimate remedy for a debtor or the creditor? But it's hard to see what the malfeasance is. This is why I'm having a problem. If, in fact, all the appreciation goes to the estate, then it doesn't seem like it's malfeasance at all for a trustee to try and keep it up as long as possible, not in this real estate market, but in a former real estate market, so that you can realize any appreciation. It appears to be what you should be doing. Yet at the same time, the statute said that the estate should be closed as soon as feasible. And, again, my perception has always been that the discharge is kind of the last thing, and then you close the estate, usually, if you can. Usually you do. Ninety percent of the time cases are closed. I filed what's called an NDR report, no distribution report. That keys to the clerk. That's a key to the clerk to look at the docket to see if a non-dischargeability 727 action is filed or not. After that point, if those two things happen, the clerk closes the case. So if I don't file an NDR by the time the decision is made after the meeting of creditors, when they're supposed to file a non-dischargeability suit, the clerk will keep the case open for a while. They'll keep the case open. And that puts notice on everybody that's administering the case. If they don't like it, if they say, well, it's increasing the value, they can file a motion to abandon it if it happens. I represent debtors myself, and it's not that big of a burden to file a motion to abandon it. There's other duties for the debtors to file a motion to avoid liens if the burden's on the debtor to do things, like avoid liens as well. I mean, so it's not that big of a burden. Okay. You're over your time, and thank you very much for your arguments. Thank you, Your Honor. I'm not sure I can use it because I don't have the authority. The authority that passes out of these data is under 523L. Secondly, if you look at and value the property as of the date of the petition, which is what 523A says, then you ought to value the property on the date of the sale, but you can't value the property on the date of sale. I know in Arizona, Washington, the exemptions have gone from $40,000 to $25,000, but sauce for the dream, sauce for the game, is when you value it on the date of the sale. And the debtors shouldn't do worse in bankruptcy than they would do in bankruptcy. So you can't do worse in bankruptcy than you would do in bankruptcy. So what you're saying is that if you're going to value it the day of the sale, you should get the exemption that exists at the day of the sale. That sounds logical. But we already have case law on, you know, the date of the amount of the exemption, right? Right. Yeah. So we can't address that. I mean, it's already circuit law. It's already, I believe, it's Supreme Court law. But you're just saying that we ought to come to a system that is overall sensible. I mean, if you follow the ruling in Taylor and in the grant ruling, and all of a sudden you get a 30-day exemption at the end of 30 days. And if you need more time, you can make a motion for it. What about all these issues about how to get a notice of legal validity? To the extent that there's fraud going on, there are criminal sanctions. Well, it doesn't have to be fraud. But as he says, it turns out the lien was not recorded. It wasn't a fraud. It just wasn't recorded. And that's a reason to go revisit it. But that's what we have judges for. If it wasn't recorded, well, you know, you've got 30 days to go do that title report. You have 30 days after the 341 meeting. And so in case it gets filed, the 341 meeting is 30 days or so away. Then you have the 341 meeting. You can ask a question. Then you have another 30 days. If there's a question, you can ask it right now. It can be between 55 or 60 days. But that's not what the rule says. It says 30 days. Justice Schuman, did you have a question? No. Okay.  Counsel, you're well over time, so thank you very much. Thank you, counsel. The cases of Gephardt v. Mahane and Chappell v. Kline are submitted.
judges: Tashima, Berzon, Timlin